SAMUEL EFFLER, *alias* CHARLES HEFFLER, defendant below, plaintiff in error, *vs.* STATE OF DELAWARE, plaintiff below, defendant in error.

1. . CRIMINAL LAW—EVIDENCE—OTHER OFFENSES—INTENT IN GENERAL.

Though as a general rule proof of distinct and independent offenses is not admissible, there are exceptions to rebut an inference of mistake, want of guilty knowledge, lawful purpose, or innocent intent that might otherwise spring from the evidence, and in some cases to meet a special defense.

2. CRIMINAL LAW—EVIDENCE—OTHER OFFENSES—INTENT— CONSPIRACY TO STEAL.

Defendant was prosecuted for conspiracy to steal, in that he induced the prosecuting witness to purchase a dry goods business, witness to put in thirty-six hundred dollars cash, defendant and one of his associates five thousand dollars each, in cash, and that, while defendant was counting his money, men claiming to be detectives broke in, stated that it was counterfeit, took the money of witness, mixed it with that of defendant, and disappeared. The court admitted, to show defendant's intent and design, testimony of a witness that three months afterwards he had been robbed of money in the same way by defendant and those whom the evidence tended to identify as the same associates. *Held* that, as the testimony of the other offense had no direct connection with the offense charged, its admission was reversible error

3. CRIMINAL LAW—EVIDENCE—FACTS IN ISSUE—IDENTITY.

To prove identity by defendant's participation in another offense, there must be some connection between the two offenses; and it is not sufficient that they be similar offenses committed by him. Almost, if not quite, the same stringency is required to prove identity of party by this kind of evidence as is required to show system or plan.

(*January* 22, 1913.)

CURTIS, Chancellor, and CONRAD and RICE, Associate Judges, sitting.

*Reuben Satterthwaite, Jr.*, for plaintiff in error.

*Andrew C. Gray*, Attorney General, and *Josiah O. Wolcott*, Deputy Attorney General, for defendant in error.

Supreme Court, January Term, 1913.

WRIT OF ERROR (No. 2, June Term, 1911) to the Court of General Sessions in and for New Castle County, (No. 32, January Term, 1910, below).

Prosecution upon an indictment charging Samuel Effler, *alias* Charles Heffler, with conspiring, with others, to steal $3,600 from Louis Reches. Verdict of guilty (2 *Boyce* 92, 78 *Atl.* 441), and defendant brings error. Reversed. The facts appear in the opinion.

RICE, J., delivering the opinion of the court:

Samuel Effler, *alias* Charles Heffler, the plaintiff in error, upon his trial, was found guilty on an indictment charging him with conspiring, with other persons unknown, to steal thirty-six hundred dollars from Louis Reches.

The assignments of error are ten in number and cover alleged errors on two points, viz.: (1) That the court erred in admitting the testimony of a witness, Benjamin Silberman, concerning a similar transaction; (2) that the court erred in not directing the jury to find a verdict of "not guilty", on the ground that the misdemeanor charged in the indictment merged in the felony proved by the state.

Testimony, as disclosed by the record, was introduced to prove: That in Wilmington in March, 1909, Louis Reches, the prosecuting witness, upon the solicitation of one Needles and the defendant, Samuel Effler, entered into an agreement with them to purchase a dry goods business in Philadelphia from a man known as Galor, who he some months later identified as one Goldstein in prison at Rochester, N. Y. Reches was to participate in the purchase to the extent of thirty-six hundred dollars cash and Needles and Effler to the extent of five thousand dollars cash. The three went to Philadelphia to complete the purchase, where, at the suggestion of the other two, Reches went with them to see a friend on Tasker Street, to inquire about the stock of goods they had agreed to purchase. While at this house Effler took out his money and commenced to count it, when two men, claiming to be detectives, came in and stated that it was counterfeit money. They took the money of witness and mixed it with Effler's. The

men then pretended to place Needles and Effler under arrest and Effler directed witness to step outside a minute, which he did. Upon his return he found the room empty of people.

[1, 2] Benjamin Silberman, under objection, testified in effect: That in June, 1909, at his place of business in Philadelphia he purchased several diamonds of a man giving the name of Goldstein, afterwards identified in prison at Rochester as one Tiddlebaum, being the same person that Reches identified under the name of Galor or Goldstein. Later the witness at the solicitation of Goldstein agreed with one Charles Heffler (identified by the witness as the defendant) to buy fifteen thousand dollars worth of diamonds from Goldstein, the witness to put five thousand dollars and Heffler ten thousand dollars in the transaction. After several postponements in making the purchase, witness went with Heffler to a house in Pierce Street, Philadelphia, taking with him five thousand dollars in cash. At the house they went into a room where was Goldstein and another man known as Fireman, whose description corresponded with the description of Needles. On the table in the room were pieces of tissue paper wrapped as if they contained diamonds, which remained unopened. Upon request witness took out his money and gave it to Heffler, who placed it with his own money on the table, whereupon seven or eight men broke into the room and pretended to arrest all. One of the supposed detectives placed the money and tissue paper packages into a satchel, and two of them went out with Fireman, two with Goldstein, and two with Heffler, and two with the witness, who was released when they reached the street.

When the court below admitted as relevant and competent the testimony of the witness Silberman they stated that it was admitted for the purpose only of showing intent, design or plan of the defendant in the case on trial and so charged the jury.

It is a general rule of criminal evidence that on the trial of a person charged with a crime, proof of a distinct, independent offense cannot be admitted into evidence.

This rule is recognized in the courts of this state as elsewhere, and that there are certain exceptions to this rule is likewise recognized. *State v. Tindal*, 5 *Harr.* 488; *State v. Freedman*, 3 *Penn.* 403, 53 *Atl.* 356.

The following reference to the exceptions is made in *Under-hill on Criminal Evidence, par.* 87:

"To this general rule there are several distinct exceptions which have been permitted from absolute necessity to aid in the detection and punishment of crime. These exceptions ought to be carefully limited and guarded by the courts and their number should not be increased. But it must be admitted that the modern tendency on the part of the courts is to be liberal in the admission of evidence of collateral crimes. The exceptions to the general rule arise either from the necessity of the case, as, for example, where two or more crimes constitute parts of one transaction, so that to prove either necessitates proof of the other, or when the intent is to be proved from circumstances, or in the third· place where the identity of the accused is expressly in issue, that is to say, where the evidence conclusively shows a crime was committed by some one, but there is a sharp conflict as to the person who committed it."

It was upon the above exceptions that the court admitted the evidence of Silberman.

Decisions on the general rule are more frequent than upon the exceptions, and it will be observed in the preceding paragraph that the exceptions are permitted from absolute necessity to aid in the detection and punishment of crime and they should be carefully limited and guarded by the courts.

Decisions upon the exceptions to the rule are neither uniform nor reconcilable, either generally or in the different states, and any attempt to classify them would be to give the reasons assigned by the different judges in admitting or rejecting the particular testimony then under consideration.

Testimony of other similar offenses has been admitted in this state, as elsewhere, to show guilty knowledge or intent where there is or may be from the evidence an inference of mistake, accident, want of guilty knowledge, lawful purpose or innocent intent.

In the case of *State v. Brown,* 85 *Atl.* 797, where the accused was on trial for abortion and the state offered testimony of a similar offense by the accused, to prove intent, the court in admitting

the testimony said: "But, wherever the intent with which an alleged offense was committed is a material element of the charge, and such intent becomes an issue at the trial, proof of other similar offenses, within certain reasonable limits, is admissible, as tending to throw light upon the intention of the accused in doing the act complained of."

In *Meyer v. State*, 59 *N. J. Law*, 310, 36 *Atl.* 483, the Supreme Court held it error to admit proof of a similar offense to prove intent and said; "To the general rule that upon the trial of a person for one offense proof of his guilt of other offenses is irrelevant, there are, it is true, some exceptions in which the defendant's guilt of the extraneous crime tends to prove against him some particular element of the crime for which he is being tried. Scienter may thus be proved, so, in appropriate cases, may opportunity, motive, preparation, concealment or escape. Where, however, the proof can go no further than to show a propensity to commit the offense in question it is not relevant."

In *Luckey v. Roberts*, 25 *Conn.* 486, the court in admitting evidence of a similar transaction used very general language, but it had particular application to the facts then on review, and upon an examination of the case it would seem that it was admitted to show guilty knowledge.

Chief Justice Paxson in the case of *Com. v. Saulsbury, Appellant*, 152 *Pa.* 554, 25 *Atl.* 610, said:

"Upon the trial in the court below the learned judge admitted the evidence of Zeloster Ross, under objection by the defendant, to prove that one William Serf was arrested, and in the custody of Jerome Saulsbury, the defendant, and that the witness and Simon Wagner paid money to secure his release. The admission of this evidence forms the subject of the first specification of error.

"We think the evidence should have been excluded. The indictment charged that the defendant had extorted money from John Bunke, Zeloster Ross and Simon Wagner, while they were under arrest, under a warrant issued by Esquire Nelson. There was no charge of having extorted money from Mr. Serf, and it was error to permit evidence in regard to him to go to the jury."

Opinion.

On this point Judge Werner in delivering the majority opinion in the case of *People v. Molineux*, 168 *N. Y.* 264, 61 *N. E.* 286, 62 *L. R. A.* 193, after mentioning various offenses in which proof of similar offenses is admitted to prove intent, said: "It will be seen that the crimes referred to under this head constitute distinct classes in which the intent is not to be inferred from the commission of the act, and in which proof of intent is often unobtainable except by evidence of successive repetitions of the act."

While we are of the opinion that in some cases it is necessary to prove intent by proof of similar offenses to rebut an inference that might otherwise obtain from the evidence in the case, or in some cases to meet a special defense on the part of the defendant, we are of the opinion that in the present case the proof of facts was of such a nature that it was not proper to admit evidence to prove guilty intent by circumstances not directly connected with the offense charged in the indictment.

Concerning the admissibility of this kind of testimony to prove plan or design, *Wigmore, par.* 304, says: "When the very doing of the act charged is still to be proved, one of the evidential facts receivable is the person's design or plan to do it. This in turn may be evidenced by conduct of sundry sorts as well as by direct assertions of the design. But where the conduct offered consists merely in the doing of other similar acts, it is obvious that something more is required than that mere similarity, which suffices for evidencing intent." And later in the same paragraph gives this illustration: "Thus, where the act of passing counterfeit money is conceded, and the intent alone is in issue, the fact of two previous utterings in the same month might well tend to negative innocent intent; but where the very act of uttering is disputed—as, where the defendant claims that his identity has been mistaken—and the object is to show that he had a general system or plan of working off a quantity of counterfeit money and did carry it out in this instance, the fact of two previous utterings may be in itself of trifling and inadequate significance."

Upon this point many cases appear in the brief filed by the Attorney General, but a careful study of the cases will reveal the fact that in most of them the proof sought to be introduced was

received by the different courts to prove intent or guilty knowledge and in many of the cases it is so stated, and upon this exception to the rule we have commented, or there was such an obvious and visible connection between the two offenses that proof of one would be proof of the other. However, in a few of the cases we cannot find that connection which we believe is necessary to admit of such proof, and believe they cannot be reconciled with the general trend of the decisions.

Upon this exception to the general rule it is said by Underhill in his work mentioned, *par*. 88: "No separate and isolated crime can be given in evidence under this exception to the rule. In order that a collateral crime may be relevant as evidence it must be connected with the crime under investigation as part of a general and composite transaction."

In *Shaffner v. Commonwealth*, 72 *Pa*. 60, 13 *Am. Rep*. 649, the court said: "To make one criminal act evidence of another, a connection between them must have existed in the mind of the actor, linking them together for some purpose he intended to accomplish, or it must be necessary to identify the person of the actor by a connection which shows that he who committed the one must have done the other. Without this obvious connection, it is not only unjust to the prisoner to compel him to acquit himself of two offenses instead of one, but it is detrimental to justice to burden a trial with multiplied issues that tend to confuse and mislead the jury. * * * From the nature and prejudicial character of such evidence, it is obvious it should not be received, unless the mind plainly perceives that the commission of one tends, by a visible connection, to prove the commission of the other by the prisoner."

[3] In the case before us, we are unable to find any connection between the offense for which the accused was being tried and the offense testified to by Silberman other than the mere similarity of the two offenses, unless it be the proof that the accused participated in both offenses. And whether this connection is sufficient to admit of the testimony of Silberman we will now consider.

*Commonwealth v. Choate*, 105 *Mass*. 451, and *Rex v. Fursey*,

6 *Carr & Payne*, 293, are the only cases cited by the Attorney General on this point.

In *Commonwealth v. Choate* the accused was charged with burning a building by means of a box peculiarly adapted to that purpose. Testimony was introduced to show that a similar box was used a short time before in an attempt to set fire to another building in the vicinity, also that a block of wood found in one box was originally part of a stick found in defendant's workshop. The defendant had sent an anonymous letter to the marshal of the town stating that he had burned several buildings in the town, but was now out of boxes and expected to get more, and expressed a motive for the fires.

The court in review in holding the evidence properly admitted said: "The defendant's counsel relies upon the expression of the court in *Commonwealth v. Williams*, 2 *Cush.* (*Mass.*) 582, that they do not sanction the admission of evidence merely tending to show that the defendant had in his possession instruments adapted to the commission of other crimes. But the evidence in this case did not merely tend to show this. It tended to show that the defendant possessed the requisite skill, materials, tools and opportunity to have made the box used to set the alleged fire; and in connection with the letter it tended to show that the defendant made both boxes with the single motive there stated. It tended to prove a use of his shop for the purpose of preparing boxes and materials for setting incendiary fires, including the fire alleged in the same place, and all instigated by one motive. In *Commonwealth v. Wilson*, 2 *Cush.* (*Mass.*) 590, the evidence respecting the key was held inadmissible, because it related to a distinct and independent transaction, not connected with the offense on trial. In *Hill's case*, 20 *Howell,* `St. Tr.* 1317, 1355, evidence that the prisoner knew how to make the preparation of the combustibles that were used for setting the alleged fire was held to be material. It may also be shown that he possessed materials capable of being converted into instruments of the offense, including the means of their production, or that he made preparations for the commission of such a crime. *Burrill on Circ. Ev.* 260, 345."

In *Rex v. Fursey*, 6 *Carr. & Payne*, 293, the defendant was indicted for stabbing one Brook, who was attempting to arrest him in a large crowd. Evidence was introduced to show that he had at the same time stabbed another person and the nature of the wound of that person. A swordlike knife was found near the defendant and not on him. Evidence of the nature of the wound on the other man was admitted to identify the instrument. The question in that case seemed to be whether the defendant was justified in preparing such a dangerous weapon, having it in his possession, and using it under the circumstances.

In *Boyd v. U. S.* 142, *U. S.* 450, 12 *Sup. Ct.* 292, 35 *L. Ed.* 1077, where the defendant below had been tried on a charge of murder, the facts being that the defendant and two others had gone to the ferry of one Byrd and requested him to take them over the creek, and upon his consenting to do so, and while he was making preparations, one of the men with the defendant told Byrd to throw out his change, saying that it was money they were after. Several persons rushed to the defense of Byrd and in the general fight which ensued one of the men was killed. At the trial proof of other robberies committed on other days at about the same time, by the defendant with his associates, was admitted. The court in holding this error said: "We are constrained to hold that the evidence as to the Brinson, Mode and Hall robberies was inadmissible for the identification of the defendants, or for any other purpose whatever, and that the injury done the fendants, in that regard, was not cured by anything contained in the charge."

In *People v. Romano*, 84 *App. Div.* 318, 82 *N. Y. Supp.* 749 (*Appellate Division, Supreme Court*), where the facts were that the robbery for which the defendant was convicted was committed by throwing snuff in the eyes of the complainant at the time of the robbery, the prosecution for the purpose of establishing identity of the defendant, offered proof to show that three weeks prior to the commission of the offense for which he was on trial, he committed another robbery at the same place upon another person by use of the same means. The court held its admission error and said: "The prosecution does not claim that it can sup-

port the ruling in the present case unless it be upon the ground that the prior crime tended to establish the identity of the defendant. Two facts are advanced in this regard in support of the theory that the testimony was admissible upon such question, i. e., that the prior crime was committed at the same place and in a similar manner. The defense was an *alibi*, consequently evidence tending to identify the defendant was vital to the case, as that was the issue litigated. It is persuasive to say that a robbery committed a short time before, at the same place, by similar means and by the same person, tends to identify the defendant as the person who committed the crime at the same place and by the same means for which he is being tried; * * * yet it has never been supposed that, where there was a separation as to time and no connection established, beyond that of place and similarity, the first crime was admissible to establish any of the elements which constituted the other."

From the above cases, and many others, it appears, to prove identity, that there must be some connection between the two offenses, and it is not sufficient that they be similar offenses committed by the same person. Almost if not quite the same stringency of proof is required to prove identity of party by this kind of testimony as is required to show system or plan. We do not find the two offenses to be connected in such a manner as would make competent and relevant the proof of the similar offense to prove identity of the accused. Applying the law as we believe it to be, in respect to the general rule in relation to the admissibility of proof of other offenses and the exceptions to that rule, to the facts of the case now under consideration, we are of the opinion that the court below was in error in admitting the proof of a similar offense as testified to by Silberman, for any of the purposes for which it was admitted.

On the point raised on assignments of error 4, 5, 6, 7, 8, and 9, after a careful consideration of the same we are of the opinion that the learned court below, in a very comprehensive opinion, correctly announced the law, and that the court was not in error in refusing to direct the jury to find a verdict of "not guilty".

There being error in the proceedings below as specified by the first, second, third and tenth assignments of error, the court directs that the judgment below be reversed.