STATE vs. JOHN E. STIEGLER, GEORGE L. DORSEY, STEPHEN A. SMITH and ALEXANDER ROTHWELL.

1. CRIMINAL LAW—CONSPIRACY—PROOF.
   As a general rule, the conspiracy charged must be proved by evidence aliunde.

2. CRIMINAL LAW—ACTS AND DECLARATIONS OF CONSPIRATORS—ORDER OF PROOF.
   After the fact of conspiracy is proved, the acts and declarations of the conspirators can be shown, and, under the wide discretion given the trial court respecting order of proof, such acts and declarations may be given in evidence before the conspiracy is shown.

3. CRIMINAL LAW—EVIDENCE—EVIDENCE OF OTHER CRIMES.
   Generally evidence of the commission of other crimes is inadmissible to prove the crime charged, even though it be of a similar nature, subject to certain well-known exceptions.

4. CRIMINAL LAW—CRIMINAL CONSPIRACY—GENERAL CONSPIRACY.
   In prosecution for conspiracy to cheat and defraud plumbers' supply company, the acts and transactions whereby different supplies were obtained than those alleged *held* to constitute one general conspiracy, and evidence thereof not inadmissible as proving other offenses.

5. CRIMINAL LAW—EVIDENCE OF OTHER CRIMES—CONSPIRACY.
   In prosecution for conspiracy to cheat and defraud plumbers' supply company of merchandise, evidence of other acts as showing a similar scheme or system was not admissible.

(*November* 23, 1917.)

BOYCE and RICE, J. J., sitting.

*David J. Reinhardt*, Attorney-General, and *P. Warren Green*, Deputy Attorney-General, for the State.

*Robert G. Harman* for accused, Dorsey and Smith; *Philip L. Garrett* for Stiegler, and *Henry R. Isaacs* for Rothwell.

Court of General Sessions, New Castle County, November Term, 1917.

INDICTMENT No. 189, September Term, 1917.

Same case on error following.

John E. Stiegler, George L. Dorsey, Stephen A. Smith, and Alexander Rothwell were jointly indicted for conspiracy to cheat and defraud Speakman Supply & Pipe Company, of certain goods, property, and merchandise. Verdict guilty. Sentences were imposed. Accused bring error. Affirmed.

Stiegler being called to testify, Mr. Harman requested that, inasmuch as Stiegler is one of the alleged co-conspirators, the court instruct him that he is not compelled to testify, and that his refusal cannot be used against him. The Attorney General suggested that the witness is represented by Mr. Garrett, and that it is not for Mr. Harman to make such a request.

*Mr. Harman:*—Under the common law, a co-conspirator was not allowed to testify; and by the statute he is merely given the privilege of testifying if he desires so to do.

*Mr. Garrett:*—I have advised the witness whom I represent to waive his rights and privileges under the statute and to testify. I also said to Mr. Harman that I had no objection to his proceeding in the manner he has.

BOYCE, J., after reading *Rev. Code* 1915, § 4215, to the witness, said:

It is for you to say whether you desire to avail yourself of the privilege which the statute affords you.

*The Witness:* I want to tell the whole truth.

*Mr. Harman:* I wish to ask whether or not the testimony of this co-conspirator is to be used solely against him or against our clients.

BOYCE, J:—The witness desires to testify. You may object to questions as they are propounded to him.

After showing by the witness that he was employed by the Speakman Supply & Pipe Company and in the capacity of a clerk, he was asked if he knew George L. Dorsey and Stephen A. Smith, and, answering affirmatively, inquiry was made of him:

"When did you first meet them? A. About the first of this year. Q. Where? A. At the store. Q. Was it during the course of your employment? A. Yes, sir. Q. Have you had any transactions with them? A. Yes, sir. Q. When did you first have any transactions with them? What was that transaction?"

*Mr. Harman:*—I object; the law is very well settled in this state, in the *Effler Case*, 2 *Boyce*, 92, 78 *Atl.* 411, and in the *Clark Case*, 9 *Houst.* 536, 33 *Atl.* 310, that in a case of conspiracy, before you can prove the conspiracy, or attempt to prove it by the acts, admissions or confessions of the co-conspirators, you must first prove it by evidence aliunde. The law as laid down in *Underhill on Criminal Evidence* is that the safest rule is that it must first be proved by evidence aliunde, before you can put in acts or declarations of the co-conspirators.

*Mr. Reinhardt:*—The part of Underhill that Mr. Harman has not referred to disposes of this question, for it holds it to be discretionary with the court to permit the evidence to go in this way, to be connected up later.

BOYCE, J.:—It is clearly within the discretion of the trial court. If the state fails to make out a prima facie case, you may move to strike out. We overrule the objection.

(Exception noted for Dorsey, Smith, and Rothwell.)

"A. Norman Woodward had just left the employ of the concern, and he had promised Mr. Dorsey a bag of fittings—"

*Mr. Harman:*—I object.

BOYCE, J.:—Is Norman Woodward one of the parties named in this indictment?

*Mr. Reinhardt:*—The counts charge these four men and others with this conspiracy. It may develop that Norman Woodward was one of the unknown conspirators.

BOYCE, J.:—The witness was interrupted in his answer. We will take his answer, and then .entertain an application to strike out.

"A. Norman Woodward had promised Dorsey and Smith this bag of fittings, and he had left the concern and asked me as a favor to give them this bag of fittings, and I gave Dorsey and Smith this bag of fittings. Q. Whose property did you give to Dorsey and Smith? A. The Speakman Supply & Pipe Company's. Q. Where did you get that property? A. At their store. Q. Where? A. Front and Market streets. Q. That was in the city of Wilmington, New Castle county and state of Delaware? A. Yes, sir. Q. When you gave that bag of fittings to Dorsey and Smith, what, if anything, did they say to you?

*Mr. Harman:*—I object; they are trying to prove this by Woodward, who is not named in this indictment.

BOYCE, J.:—We overrule the objection.

"A. They said, 'All right;' that is all that was said. Q. Was anything else done at that time? A. No, sir. Q. Was there anything done later concerning this transaction? A. Yes, sir. Q. What was it? A. They came into the store later on and asked for a bath-cock, and I gave it to them and they gave me five dollars and told me to give half to Joe Weatherby, another employe of the store. Q. Whose bath-cock did you give them? A. The Speakman Supply & Pipe Company's their property. Q. What, if anything, did you receive from Dorsey and Smith at that time, in payment for that bath-cock, you acting as an agent for the Speakman Supply & Pipe Company? A. I don't understand the question. Q. What did you receive in payment for that bath-cock that you, acting as an employe of the Speakman Supply & Pipe Company should pay the company for that bath-cock? A. I received the money for myself, and not for the company. Q. Where were you paid the money? A. At the store.

Q. By whom were you paid? A. By Mr. Dorsey. Q. What was it you say he said? A. To give half of the money to Weatherby. Q. For what purpose? A. I do not know. Q. What did you do with your half? A. Put it in my pocket. Q. Did the Speakman Supply & Pipe Company get any of that money, if you know? A. No sir; they did not."

*Mr. Harman:*—I object, and ask that the answer go out. It is immaterial; if Dorsey and Smith paid this man a proper price, they are not responsible for what this man did with the money.

*Mr. Reinhardt:*—But they told this man to give another man half of this money. That is an overt act to sustain this conspiracy. * * *

"Q. Are you acquainted with the method of doing business by the Speakman Supply & Pipe Company, when customers order or receive goods?"

*Mr. Harman:*—I object; it is immaterial whether he knows or not.

BOYCE, J:—We overrule the objection, subject to your right to move to strike out later.

"A. Yes, sir. Q. If a customer came into your store and purchased a bath-cock, what would be done? A. I would get him the bath-cock, and go into the office and have a price set on it, tell the customer the price, receive the money, write up a cash sales slip, and give the customer the duplicate with the bath-cock. Q. Did you do that in connection with the delivery of the bath-cock to Dorsey?"

*Mr. Harman:*—I object; this is not material, unless it is shown that Dorsey and Smith knew their custom.

*Mr. Reinhardt:*—I promise to show that.

BOYCE, J:—Under the promise, we overrule the objection. * * *

Weatherby, a clerk in the said store, being called as a witness was asked among other questions:

"Did you ever have any talk with either Smith or Dorsey about their getting material from the Speakman Supply & Pipe Company? A. Yes, sir.  Q. With whom did you have the first talk?  A. With Dorsey.  Q. When was it?  A. About three weeks or a month after I went to work there.  Q. Was it in the store?"

*Mr. Harman:*—This witness is one of the co-conspirators in other indictments, and I want to urge the same objection as to the previous witness.

*Mr. Reinhardt:*—He is not charged in this indictment.

*Mr. Garrett:*—I represent this defendant and desire to make the same statement that I did with reference to the previous witness.

*Mr. Harman:*—Whatever these defendants, Dorsey and Smith, had to do with this witness, would constitute another case of conspiracy, and has nothing to do with this case at trial.

*Mr. Reinhardt:*—We will have to meet this question, and we are ready to argue it as soon as it is properly raised by a question asked this witness.

*Rev. Code* 1915, § 4215, first being read to the witness, the court inquired of him whether he claimed exemption thereunder. He answered, "No, sir."

*Mr. Harman:*—My objection is that the case before the court is a charge of conspiracy on the part of Stiegler, Dorsey, Smith and Rothwell, and this witness is not a party to this indictment. The state is trying to prove a conspiracy on the part of this witness, and Dorsey and Smith, and that is what I object to.

BOYCE, J:—Without giving our reasons at this time, we overrule, the objection.

(Exception noted for Dorsey, Smith and Rothwell.)

"A. Yes, sir; Mr. Dorsey came to me and he said, 'Joe, you are not making much money for what you are doing here; how would you like to make a few dollars on the side?  All you have to do, whatever I ask for, just pass it to me and I will give you a check now and then;' and a couple of days later I told him I

would let him have such small stuff as he needed now and then. Q. Did you thereafter give Dorsey stuff? A. Yes, sir; I did. Q. Who, if anybody, was with him at times when you handed the stuff over? A. Smith was with him two or three times. Q. Whose property was it you handed over to Dorsey in pursuance of that arrangement? A. The Speakman Supply & Pipe Company's. Q. What money did the Speakman Supply & Pipe Company get out of the stuff you handed over? A. Nothing. Q. What did you get? A. I got a tip now and then. * * * Q. When you would give this material to Dorsey or Smith, or to both of them did you make out a cash slip and turn it into the office? A. No, sir. Q. Did you ever sell any straight stuff to Dorsey and Smith? A. Yes, sir. Q. What did you do? A. I made out a cash slip and turned it into the office. Q. There were sales that were straight? A. Yes, sir. Q. Who got the money for those sales? A. The Speakman Supply & Pipe Company. Q. Were you present on any occasion when Mr. Dorsey came in the store and got a bath-cock? A. At that time I was working around the store about twenty or thirty yards away, and Dorsey took it and said something to Stiegler and walked out, and about ten minutes later he came back, and when he came in I was about two feet away from Stiegler. Q. How much money did Dorsey give to Stiegler on that occasion? A. Five dollars. Q. And what did Dorsey say? A. He told him to split it with me. Q. Did you see whether or not Stiegler prepared any cash slip sale when he handed over that bath-cock? A. No, sir; he did not. Q. And you and Stiegler got the two dollars and fifty cents apiece? A. Yes, sir. Q. Did you turn your share of that money into the Speakman Supply & Pipe Company? A. No, sir. Q. Were you with Mr. Stiegler yesterday about two o'clock? A. Yes, sir. Q. Where? A. We were on the outside of this building, at Eleventh and King streets. Q. Which one of these defendants approached you? A. Mr. Smith. Q. What did you hear Smith say? A. I heard him say to Stiegler to say when he testified that there was no agreement between them, and if there was no agreement there could not be any conspiracy and the case would be dropped. Q. You were under subpœna at that time? A. Yes, sir. * * *"

Woodward, another clerk in the said store, being called as a witness, testified that he knew George L. Dorsey and Stephen A. Smith.

"In what capacity did you work for the Speakman Supply & Pipe Company? A. I was clerk in the store, and also shipping clerk. Q. As a clerk and shipping clerk for the Speakman Supply & Pipe Company, did you have any transaction of any nature with George L. Dorsey or Stephen A. Smith? A. I did. Q. When was the first transaction you had with either of these men? A. About April, 1916. Q. With which one? A. With both men. Q. State the first transaction—with whom did you have that first transaction? A. With both of them. Q. What, if anything, did they say to you at that time?"

*Mr. Harman:*—I make the same objection; they are trying to prove a crime by a co-conspirator in an entirely different case.

BOYCE, J.:—Without giving our reasons, we overrule the objection.

(Exception noted for Dorsey, Smith and Rothwell.)

"A. They told me I wasn't making the money I should, and if I would do what they said, I might make some extra money, and that was that I sell them goods at reduced prices and keep the money myself. Q. Who made that statement? A. Dorsey. Q. Was Smith with him? A. Yes, sir. Q. What did you do at that time, or later, if anything, in carrying out what they had suggested to you? A. I gave them materials at whatever prices they would give me for it. Q. Whose material did you give them? A. The Speakman Supply & Pipe Company's. Q. Was there a cash sale slip made at the time? A. There was not. Q. Were there any straight transactions at all that you made with Dorsey and Smith? A. There were. Q. When you made straight tran- actions, what, if any, slips or papers did you make out? A. I would turn a cash sale in. Q. Were there any times when you did not make out these papers? A. Yes, sir. Q. When was that? A. When the deal was not correct. Q. How many times were these occasions when the deal or deals were not cor-

rect? A. Several times. Q. With whom did you deal on these occasions? A. With both Dorsey and Smith.    *    *    * "

Other witnesses, employes in the store, gave similar testimony against similar objections. At the close of the testimony for the state, Mr. Harman moved (1) that the evidence of the witness John E. Stiegler be stricken from the record, on the ground that such evidence was not admissible to bind the defendants Dorsey and Smith until the existence of a conspiracy by Stiegler, Dorsey, Smith and Rothwell, as alleged in the indictment, had first been proven by the state, at least prima facie, by evidence aliunde, and that the state had failed thereafter to make out a prima facie case of conspiracy by evidence aliunde; (2) that the evidence of the witnesses Joseph Weatherby, Norman Woodward, James L. Mannering and Earl Kirkley, respectively, be stricken from the record, on the ground that they were not named as alleged co-conspirators in the indictment in this case, and that evidence of an alleged conspiracy between each of them and the defendants Dorsey and Smith was not admissible to prove a conspiracy by Stiegler, Dorsey, Smith and Rothwell, as alleged in the indictment, as it was simply an attempt to prove the alleged crime set out in the indictment by attempting to prove another distinct and separate crime by Weatherby, Dorsey and Smith; Woodward, Dorsey and Smith—Mannering, Dorsey and Smith, and Kirkley, Dorsey and Smith.

Mr. Isaacs, on the same grounds, moved to strike out all similar testimony affecting the defendant Rothwell.

BOYCE, J. We decline the motion to strike out.
(Exception noted for Dorsey, Smith and Rothwell.)

BOYCE, J., charged the jury in part:
The first count in the indictment charges that—

"John E. Stiegler, George L. Dorsey, Stephen A. Smith and Alexander Rothwell, all late of etc., on, etc., unlawfully, did falsely and fraudulently conspire, combine, confederate and agree together and with divers other persons whose names to the jurors aforesaid are unknown, to cheat and defraud a certain Speakman Supply & Pipe Company of divers large quantities of its goods, property and merchandise.    *    *    * "

The second count is similar.

The third count charges that—

"He, the said John E. Stiegler, then and there being a clerk and employed by a certain Speakman Supply & Pipe Company in their business of the manufacture and sale of certain merchandise, to wit, plumbing materials and supplies, and he, the said Alexander Rothwell, then and there being a driver of a certain horse and delivery wagon, employed by the said Speakman Supply & Pipe Company to deliver to purchasers merchandise, to wit, plumbing materials and supplies purchased by persons from said Speakman Supply & Pipe Company, and said George L. Dorsey and Stephen A. Smith, then and there being engaged and associated together in the plumbing buinesss and in the sale and installation of plumbing materials and supplies   *   *   *   unlawfully and wickedly did conspire, combine, confederate, and agree together fraudulently to steal, take and carry away and to convert to their own use divers quantities of the goods and merchandise, to wit, plumbing materials and supplies, then and there belonging to, and the property of said Speakman Supply & Pipe Company, of great value.   *   *   *"

The fourth count is similar to the third.

Conspiracy is a common-law offense and is expressly made a misdemeanor by *Rev. Code* 1915, § 4797.

A conspiracy is a combination of two or more persons to do either an unlawful act or a lawful act by criminal or unlawful means with unity of design and purpose. The gist of the offense is the unlawful combination between the parties. No formal agreement between the parties to the conspiracy charged is necessary. It is sufficient that the minds of the parties meet understandingly so as to bring about an intelligent and deliberate agreement to do the acts and committ the offense charged. Con-. spiracy implies concert of design and not participation in every detail necessary to carry the general purpose or design into execution. 12 *C. J.* 544, § 7 (*b*). Though the common design is the essence of the charge, it is not necessary to prove that the accused came together and actually agreed in terms to have that design and to pursue it by common means. If it be proved that the accused pursued, by their acts, the same object, often by the same means, one performing one part and another another part of the same, so as to complete it, with a view to the attainment of the same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object. 3 *Greenl. Ev.* (16*th Ed.*) 101.

A conspiracy may be shown either by direct evidence, that is, by the admissions and declarations of the parties or co-conspirators, or by circumstantial evidence; that is, by facts and circumstances from which the existence of the conspiracy may be inferred. Proof of a conspiracy will generally, from the nature of the case, be circumstantial. Circumstantial evidence is where, some facts being proved, another fact follows as a natural or very probable conclusion from the facts actually proved, so as readily to gain the assent of the mind from the mere probability of its having occurred. It is the inference of a fact from other facts proved; and the fact thus inferred and assented to by the mind, is said to be presumed; that is to say, it is taken for granted until the contrary is proved. And this is what is called circumstantial evidence, and it is adopted the more readily in proportion to the difficulty of proving the fact by direct evidence. Such evidence in order to warrant a conviction, must be sufficient to satisfy the jury beyond a reasonable doubt. The rule is that where the evidence is solely circumstantial, the jury must be fully satisfied, not only that the circumstances are consistent with the accused having committed the act or acts charged as constituting the crime, but they must also be fully satisfied that the facts shown by such evidence are such as to be inconsistent with any other rational conclusion than that the accused was the party who committed the act complained of. The facts established by such evidence must be such as to exclude any other reasonable hypothesis or conclusion. *State v. Tyre*, 6 *Penn.* 343, 357, 67 *Atl.* 199.

The testimony of Stiegler, one of the persons accused, was admitted against the objection that testimony of a co-conspirator is not admissible, until the conspiracy as charged in the indictment is established prima facie by other testimony. The testimony of three other witnesses, each of whom is indicted with Dorsey and Smith for a conspiracy similar in all respects to the case now on trial, was admitted against objection on the same ground. The order in which testimony may be introduced is largely within the discretion of the court. Whether testimony is or is not admissible is for determination of the court. But the jury are the judges of the credibility of the witnesses and of the

Charge.

weight and value of their testimony. The court admitted the testimony of these witnesses as competent and relevant evidence; although we say to you that such evidence was admitted, not for the purpose of proving the commission of another crime, but only for the purpose of showing whether a common design, such as that charged in the indictment, existed between the parties, and it is not to be considered by you at all unless you are satisfied from other evidence that there was an unlawful combination entered into by the accused persons such as is charged in the indictment. *State v. Effler,* 2 *Boyce,* 92, 112, 78 *Atl.* 411.

The acts, declarations and statements of these witnesses cannot bind Dorsey, Smith and Rothwell until the state proves to your satisfaction by other direct or circumstantial evidence that an unlawful combination between the parties existed as charged in the indictment.

The testimony of a co-conspirator is always admissible, but it should be weighed and considered with care. It is the practice of the courts to caution juries that there should not be a conviction on such testimony unless it be corroborated by other evidence in the case, aside from the testimony of other co-conspirators.

Whenever the existence of a conspiracy is established, each conspirator is liable for the overt acts of his confederates committed in pursuance of the common, unlawful design, and it is immaterial when he joined in the combination.

The weight to be given to the testimony of a co-conspirator is for the jury alone, considered in view of all the evidence. It is the duty of the jury to reach their verdict on a careful consideration of all the evidence, and the law applicable thereto as announced by the court.

So that if, after carefully considering all the evidence, you entertain a reasonable doubt of the guilt of all or any of the accused persons, your verdict should be not guilty as to such person or persons.

If you believe from the evidence beyond a reasonable doubt that the accused persons did corruptly and unlawfully conspire combine, confederate and agree together to cheat and defraud or feloniously to steal, take, carry away and to convert to their own

use, goods and chattels of the Speakman Supply & Pipe Company, as charged in the indictment, your verdict should be guilty.
\*     \*     \*

Verdict, guilty as to all four defendants, with recommendation to mercy as to Stiegler and Rothwell.

Sentences were imposed. Whereupon the accused filed a supersedeas bond, and also a præcipe for writ of error with the clerk of the Supreme Court, and they were released from custody. Error issued, and subsequently a bill of exceptions was signed.

The errors assigned appear in the opinion of the court.

Stiegler, Dorsey, Smith and Rothwell were indicted upon a charge of conspiring among themselves and with others whose names were unknown, to cheat and defraud the Speakman Supply & Pipe Company of divers large quantities of its goods and merchandise.

The Speakman Supply & Pipe Company for a number of years past has been engaged in the plumbing and supply business in Wilmington. Dorsey and Smith in April, 1916, and for a long time prior thereto, were associated together in the plumbing business with their work shop and show room at Fourth and Jackson streets, Wilmington, Delaware. Rothwell was a colored man employed by the Speakman Supply & Pipe Company as a driver of its delivery wagons. Stiegler, Woodward, Mannering, Weatherby and Kirkley were young men whose ages, excepting Woodward, ranged from seventeen to twenty years. Woodward was twenty-four years of age. All were employed by the Speakman Supply & Pipe Company as clerks in its store, though not all during the same period of time. Stiegler is the only one named in this indictment. Before any arrests were made, Stiegler, Woodward, Mannering and Weatherby confessed to their share in the offense charged.

It was the contention of the state that there was but one conspiracy which originated in April, 1916, between Dorsey, Smith and Woodward, and that subsequently, Dorsey and Smith induced Rothwell, Weatherby, Mannering and Stiegler to join in the conspiracy.

Statement.

That the plan or scheme of the conspiracy was for these clerks while in the store of the Speakman Supply & Pipe Company to deliver from time to time, certain articles of merchandise of the company to Dorsey or Smith or both of them without collecting any money therefor, or making any charge or entry of the transaction on the books of the company, and, of course, without the knowledge of the company.

That other articles of merchandise of the Speakman Supply & Pipe Company too bulky to be carried away by Dorsey and Smith, were delivered to the driver Rothwell who would put them on the wagon and deliver them to the shop of Dorsey and Smith, and no money would be collected or charge made for these articles. Dorsey and Smith gave various sums of money to Stiegler and to the other clerks as rewards for their parts in these transactions and instructed them to pay parts of the money so received to Rothwell as a reward for his conduct.

That as a reward for this conduct Dorsey or Smith, and sometimes both of them, would from time to time give certain sums of money to these clerks for their own use, which sums were invariably much less in amount than the value of the merchandise delivered to Dorsey and Smith.

In one instance five dollars were given by Dorsey and Smith to Stiegler, which sum, by their direction, was divided by Stiegler between himself and Weatherby. In another instance a bag of plumbing fittings belonging to the Speakman Supply & Pipe Company was delivered free to Dorsey and Smith through the joint action of Stiegler and Woodward.

Kirkley refused to enter the conspiracy, although solicited to do so by Dorsey and Smith.

Stiegler, Woodward, Mannering, Weatherby and Kirkley each testified at the trial against objection. Motion to strike out the testimony of Stiegler, on the ground that the state had failed to prove the conspiracy charged by evidence aliunde, was denied Also a motion to strike out the testimony of Woodward, Mannering, Weatherby and Kirkley on the ground that the state had attempted to prove one crime, viz., the alleged conspiracy of Stiegler, Dorsey, Smith, and Rothwell, by trying to prove another

separate and distinct crime in each instance, viz., by an alleged conspiracy by (a) Weatherby, Dorsey and Smith; (b) Woodward, Dorsey and Smith; (c) Mannering, Dorsey and Smith; and (d) Kirkley, Dorsey and Smith, and each one at a different time than that set out in the indictment as to Stiegler, Dorsey, Smith and Rothwell.

It was also urged in support of the motion that the attempt to show (a) that Weatherby, Dorsey and Smith, committed a conspiracy; (b) that Woodward, Dorsey and Smith committed a conspiracy; (c) that Mannering, Dorsey and Smith conmmitted a conspiracy; and (d) that Kirkley, Dorsey and Smith committed a conspiracy—was inadmissible to try to prove that Stiegler, Dorsey, Smith and Rothwell committed a certain conspiracy as set out in the indictment, and at a time different from any of the above, because it was an attempt to try to prove one crime by trying to prove another separate and distinct crime, and the exceptions to the general rule (forbidding this to be done) as to necessity, identity, plan, guilty knowledge and intent, did not apply, and were not applicable, in this case.

Argued before CURTIS, Ch., PENNEWILL, C. J., and CONRAD and HEISEL, J. J.

## ARGUMENT FOR PLAINTIFFS IN ERROR.

The acts, declarations and statements of alleged co-conspirators cannot be considered against the accused until the state proves an unlawful conspiracy between accused and the others. *State v. Effler*, 2 *Boyce*, 92, 78 *Atl.* 411.

The safest rule is to satisfy the jury by a prima facie case that the conspiracy existed, and then, to offer evidence of the declarations of any co-conspirators. *Underhill Crim. Ev.* § 497.

The acts, declarations and statements of other persons cannot bind the defendants until the state proves that an unlawful conspiracy or combination exists as charged in the indictment and that the defendants were parties to it. *State v. Effler*, 2 *Boyce*, 92, 112, 78 *Atl.* 411.

It is a general rule of criminal evidence that on the trial of a person charged with a crime proof of a distinct, independent, offense cannot be admitted into evidence. *Effler v. State*, 4 *Boyce*, 64, 85 *Atl.* 731; *State v. Brown*, 3 *Boyce* 499, 504, 85 *Atl.* 797.

The exceptions to the general rule ought to be carefully limited and guarded by the courts and their number should not be increased. *Effler v. State*, 4 *Boyce* 62, 65, 85, *Atl.* 731.

The case of necessity does not apply here for the state did not have to prove some other crime in order to be able to prove the one set out in the indictment. The case of "intent" was not involved at all in this case. All the state had to do was to prove the commission of the crime, and the intent followed as a necessary consequence. *State v. Brown*, 3 *Boyce* 499, 506, 85 *Atl.* 797.

In this case no unlawful combination was proven by any one but Stiegler—a co-conspirator—and this evidence was inadmissible.

Argument for the State, Defendant in Error.

The overwhelming weight of authority is to the effect that the order of admission of testimony in cases of conspiracy is left almost entirely to the discretion of the trial court and such discretion will not be reviewed on error except in clear cases of abuse. *Underhill Cr. Ev.* §§ 134, 492; 2 *Whart. Cr. Ev.* 435.

It is not necessary to show that the accused took part in every act of the conspiracy or that he had actual knowledge of every act. *Underhill Cr. Ev.* § 492; *People v. Miles*, 123 *App. Div.* 862, 108 *N. Y. Supp.* 520; 2 *Russell on Crimes* (*6th Ed.*) 533, 698.

It is competent to prove either the conspiracy which renders the acts of the conspirators admissible in evidence, or to prove the acts of the different persons and thus prove the conspiracy. *Carson Cr. Cons.* 212, 214, 216; 2 *Bishop New Cr. Pro.* § 227; 2 *Archbold Cr. Pro.* 621, 622; 12 *C. J.* 634; 8 *Cyc.* 862.

Attention, also, is called to the fact that John E. Stiegler, the first witness examined on behalf of the state, was a co-defendant with the plaintiffs in error, and a party to the alleged conspiracy.

The section of the statute in regard to testimony by an accused person was read to Stiegler by the trial court and he expressed his willingness to testify as to his participation in, and knowledge of the alleged conspiracy.

One of the approved methods of proof of a conspiracy is where one of the persons implicated consents to be examined as a witness for the prosecution. *Carson Cr. Con.* 212.

This express point was decided in the case of *State v. Clark*, 9 *Houst.* 536, 33 *Atl.* 310.

In *State v. Adams et. al.*, 1 *Houst. Crim. Cas.* 361, the only witnesses for the state to prove the conspiracy were two of the accomplices of the defendants.

· The first count of the indictment alleged that the plaintiffs in error "did falsely and fraudulently conspire, combine, confederate, and agree together and with divers other persons whose names are to the jurors aforesaid unknown.  *  *  * "

The conspiracy charged was a general one, "to cheat and defraud," etc., and such was the allegation in said count.

While Stiegler was the last of the clerks of Speakman Supply & Pipe Company to enter into the conspiracy, the testimony clearly shows that there was but one general combination and confederation to cheat and defraud the company, in which Dorsep, Smith, and Rothwell, at different times, made use of and were ble to carry out their general scheme of cheating and defrauding the company by using the various clerks of that company.

The record shows that the first transaction which Norman Woodward had with the plaintiffs in error was about April, 1916; that Joseph Weatherby was employed by the Speakman Supply & Pipe Company on July twenty-second, 1916, and that about three weeks or a month after he went to work he had a conversation with the plaintiff in error, George L. Dorsey; that James L. Mannering began his fraudulent transactions at the suggestion of Dorsey and Smith in November, 1916; that the conspiracy was a general one to defraud the Speakman Supply & Pipe Company of their goods is shown by the testimony of the various witnesses, in that their testimony as to various transactions supplements and corroborates the testimony of each other.

John E. Stiegler testified that:

"Norman Woodward had promised Dorsey and Smitht his bag of fittings, and he had left the concern and asked me as a favor to give them this bag of fittings, and I gave Dorsey and Smith this bag of fittings."

His testimony as to Weatherby being present at the time of the delivery of the bath-cock, and of the plaintiff in error, Dorsey, giving him five dollars, with instructions to give Weatherby half of it, was brought out both in his direct and cross-examination.

His testimony made Woodward and Weatherby participants in the general scheme to cheat and defraud the Speakman Company.

In the testimony of Joseph Weatherby evidence is given concerning this same transaction with Dorsey, as testified to by the witness, Stiegler, which shows that these ·two men were involved at the same time:

"Were you present on any occasion when Mr. Dorsey came in the store and got a bath-cock?  A. At that time I was working around the store about twenty or thirty yards away, and Dorsey took it and said something to Stiegler and walked out, and about ten minutes later he came back, and give when he came in I was about two feet away from Stiegler. Q. How much money did Dorsey to Stiegler on ·that occasion?  A. Five dollars.  Q. And what did Dorsey say?   A. He told him to split it with me.

This transaction is brought out more fully in the cross-examination of this witness.

In the testimony of Norman Woodward evidence is given concerning the transaction in regard to a bag of fittings as testified to by the witness, Stiegler:

"Mr. Stiegler has testified concerning a bag of fittings.  Do you recall this transaction?  A. I do.   Q. Will you tell this court and jury what that transaction was?   A. When I left the Speakman Supply & Pipe Company, Dorsey and Smith, owed me ten dollars, and I saw them after I left there, and the ytold me if I sent them out a bag of fittings they would give me ten dollars.  *   *   *Q. What did you do after having this talk?  A. I called Stiegler up on the 'phone and asked him if he would do it for me, which he did."

This transaction by Woodward was referred to in the cross-examination of the witness.

While there is no evidence given by Stiegler, Woodward, or Weatherby of any transaction in which Mannering took a part, or by Mannering himself, yet, from the evidence as given by Stiegler, Weatherby, and Woodward, a general conspiracy to defraud the Speakman Supply & Pipe Company had been sufficiently disclosed to make the testimony of James L. Mannering and Earl Kirkley relevant and germane to the issue.

No objection can be urged that the witnesses, Woodward, Weatherby, and Mannering were not indicted as co-conspirators with Stiegler, Dorsey, Smith and Rothwell. The law is well settled that it is not necessary that all the conspirators should be indicted to render their testimony admissible. 12 *Cyc.* 437; *State v. Adams, et al.*, 1 *Houst. Crim. Cas.* 361.

Whlie the state contends that the testimony of the several witnesses, whose testimony was objected to, shows that the various transactions testified to were part of a general scheme to cheat and defraud, as charged in the indictment, and admissible, yet, if the court should agree with the contention of counsel for the plaintiffs in error that there were a number of conspiracies, still, it is submitted that the evidence of the different transactions was admissible under the authority of *State v. Brown*, 3 *Boyce* 499, 85 *Atl.* 797, and *Effler v. State*, 4 *Boyce* 62, 85 *Atl.* 731. See, also, 2 *Whart. Crim. Ev.* (10th Ed.) §§ 1657 and 1671; *Underhill Crim. Ev.* § 89; 3 *Ency. of Ev.* 413; 11 *Ency. of Ev.* 801; 12 *Cyc.* 409; 3 *Bish. New Crim. Proc.* § 235; 2 *Bish. New Crim. Proc.* § 1126.

Great latitude is allowed in admission of evidence. 12 *C. J.* 634.

There was a similar scheme or system of criminal action. The testimony of Woodward, Mannering, Weatherby, and Kirkley was admissible in that such showed a similar scheme or system used by the plaintiffs in error. Weatherby testified that he was approached by Dorsey, who stated that he, the witness, was not making much money for what he was doing, and asked him how would he like to make a few dollars on the side, and told him all he would have to do would be to pass goods and that he would be given a check now and then.

Similar testimony was given by Woodward, Mannering and Kirkley. 11 *Ency. of Ev.* 806; 12 *Cyc.* 411.

There was proof of the guilt of the defendants by their own acts. The testimony of Woodward, Mannering, and Weatherby was admissible to show that they were approached by Dorsey and Smith, who endeavored to have them, when they testified, to state that there was no agreement or understanding between them, in that it showed that the conspiracy and combination was not only with Stiegler, but with the other witnesses as well. These acts were admissions of guilt, not only that they had formed the alleged unlawful agreement and combination, but were evidence of the fact that they themselves recognized the other witnesses as members of a general conspiracy to cheat and defraud the Speakman Supply & Pipe Company.

PENNEWILL, C. J., delivering the opinion of the court:

The plaintiffs in error were indicted and convicted at the September term, 1917, of the Court of General Sessions for New Castle county, upon a charge of conspiring among themselves and with others whose names were unknown to the grand inquest, to cheat and defraud the Speakman Supply & Pipe Company of divers large quantities of its goods and merchandise.

The errors assigned are as follows:

That the court erred in refusing to have stricken from the record the evidence of John E. Stiegler, in so far as it related to the alleged conspiracy on the part of Stiegler, Dorsey, Smith and Rothwell, said evidence not being admissible to bind the defendants Dorsey and Smith until the existence of a conspiracy by Stiegler, Dorsey, Smith and Rothwell, as alleged in the indictment, had first been proven by the State, at least by prima facie evidence by evidence aliunde, and that the state had failed to make out a prima facie case of conspiracy by evidence aliunde; this evidence relating to the said conspiracy is set out verbatim in the bill of exceptions and is made part of and incorporated in this assignment of errors to avoid needless tautology.

That the court erred in refusing to have stricken from the record the evidence of the witnesses Joseph Weatherby, Norman

Woodward, James L. Mannering and Earl Kirkley, respectively, as they were not named as alleged co-conspirators in the indictment in this case and that evidence of an alleged conspiracy between each of them and the defendants Dorsey and Smith was not admissible to prove a conspiracy by Stiegler, Dorsey, Smith and Rothwell, as alleged in the indictment, as it was simply an attempt to prove the alleged crime set out in the indictment by attempting to prove another distinct and separate crime by (a) Weatherby, Dorsey and Smith; by (b) Woodward, Dorsey and Smith; by (c) Mannering, Dorsey and Smith; and by (d) Kirkley, Dorsey and Smith. The above evidence is set out verbatim in the bill of exceptions and is made part of and incorporated in this assignment of errors to avoid needless tautology.

The grounds relied upon by the plaintiffs in error are two, viz.:

(1) That the state proved the conspiracy by Stiegler, one of the defendants, a co-conspirator, and failed to make such proof by evidence aliunde.

(2) That the state in order to prove the charge in the indictment introduced evidence of other distinct and separate conspiracies or crimes each of which was committed by one not named in the indictment in conjunction with two who are named in the indictment.

The contentions of the state are as follows:

(1) That there was but one conspiracy, which originated in April, 1916, between Dorsey, Smith and Woodward, and that subsequently Dorsey and Smith induced Rothwell, Weatherby, Mannering and Stiegler to join the conspiracy.

(2) There was no error in admitting the testimony of conspirators not named in the indictment, or in refusing to have their testimony stricken from the record, because:

(a) The conspiracy charged was a *general* one to cheat and defraud by those named in the indictment and divers other persons whose names were to the grand jurors unknown.

(b) If the transactions testified to by the various witnesses did not constitute one general conspiracy to cheat and defraud, but a number of separate and distinct conspiracies, still the proof

of other acts was permissible—under the law of this state, as showing a similar scheme or system of criminal action used by the defendants, or some of them.

Dorsey and Smith were engaged in the plumbing business, and Rothwell was employed by the Speakman Company as a driver of its delivery wagons. The other persons named in the assignments of error were young men employed by the Speakman Company as clerks in its store, and were all, except Woodward, under twenty-one years of age.

Counsel for the respective parties have cited authorities in and out of the state in support of their contentions, but we think there is no doubt about the general principles of law referred to. The difficulty arises in their application to the facts of the particular case.

[1, 2]  It is true, as a general rule, that the conspiracy charged must be proved by evidence aliunde; but after the fact of conspiracy is proved the acts and declarations of the conspirators named in the indictment can be shown. And under the wide and wise discretion given the trial court respecting the order of proof, such acts and declarations may be given in evidence before the conspiracy is shown.

[3]  It is also true, as a general principle, that it is not permissible to prove the commission of the crime charged by evidence of the commission of another crime, even though it be of a similar nature. There are, however, certain well known exceptions to this rule.

The court are of the opinion that the case of *State v. James Adams* and *John Aiken*, 1 *Houst. Crim. Cas.* 361, disposes of appellants' first assignment of error. In that case, as in this one, the indictment charged that certain persons, who were named, "conspired together, and with divers other evil disposed persons whose names were unknown to the grand jury to commit the crime alleged." The case is briefly reported but it is clearly stated that the "conspiracy as alleged was proved by the testimony of two witnesses who fully admitted and stated that they were accomplices in it."

[4, 5] Appellants' second assignment of error assumes that distinct and separate conspiracies were proved, but the court are clearly of the opinion, after considering all the testimony that the jury could very well have found, as they must have found from the charge of the court below, that the acts and transactions testified to by the witnesses produced by the state constituted one general conspiracy to cheat and defraud the Speakman Pipe & Supply Company. If the conspiracy was a general one on the part of all the parties named, including those not charged in the indictment, then the testimony admitted was not objectionable on the ground that it proved other offenses. But the contention of the state, that even if it proved other offenses it was admissible "as showing a similar scheme or system of criminal action used by the defendants or some of them.," cannot be sustained under the law of this state. *Effler v. State*, 4 *Boyce* 62, 85 *Atl.* 731.

It would not come within any of the recognized exceptions to the general rule that it is not permissible to prove the commission of the crime charged by evidence of the commission of another crime, even though it be of a similar character.

The judgment of the court below will be affirmed.