BENJAMIN GARBOCTOWSKI, Plaintiff in Error, *vs.* THE STATE OF DELAWARE, Defendant in Error.

1. CRIMINAL LAW—RULING ON MOTION FOR NONSUIT NOT FINAL OR REVIEWABLE ON WRIT OF ERROR.

Under Const. 1897, *art.* 4, § 12, giving the Supreme Court jurisdiction to issue writs of error to the Court of General Sessions in certain cases "and to determine finally all matters in error in the judgments and proceedings," a writ of error will not lie either to the granting or refusing of a nonsuit, since the ruling on a motion for a nonsuit does not constitute a decision of a final character.

2. CRIMINAL LAW—REFUSAL TO DIRECT A VERDICT FOR DEFENDANT NOT REVIEWABLE ON WRIT OF ERROR; QUESTION RESERVED BY REQUEST FOR INSTRUCTION AND EXCEPTION TO REFUSAL.

The refusal of the trial court to direct a verdict for the defendant in a criminal case is not a judgment or proceeding of such a final character that it can be reviewed on a writ of error in the Supreme Court, under *Const.* 1897, *art.* 4, § 12; the proper method of preserving the question of the sufficiency of the evidence for submission to the jury being a prayer for binding instructions on final submission of case and an exception to court's refusal to so charge.

3. INTOXICATING LIQUORS—EVIDENCE HELD FOR JURY IN PROSECUTION FOR HAVING POSSESSION OF MORE THAN ONE QUART.

In a prosecution for having possession of more than one quart of spirituous liquor, in violation of *Act. Gen. Assem. Feb.* 27, 1917 (29 *Del. Laws, c.* 10), § 2, evidence *held* sufficient for submission of case to jury as against contention that there was no proof that the liquor found by the officers was in defendant's possession, or that the liquor so found was spirituous.

4. CRIMINAL LAW—RULE AS TO NECESSITY OF REPEATING OBJECTIONS AT SUBSEQUENT STAGES OF TRIAL STATED.

Generally objections, whether in connection with the admission of evidence or other matters, must be repeated at subsequent stages of the trial, when necessary to call the court's attention to the facts and grounds of such objection in connection with the particular matters complained of; but such rule does not apply when the ruling of the court on a previous objection clearly covers and authorizes the subsequent proceedings, so that further objection would be merely idle form.

Syllabus.

5. CRIMINAL LAW—ADMISSION OF EVIDENCE HELD REVIEWABLE, NOT-WITHSTANDING FAILURE TO NOTE EXCEPTION.

Where an objection to state's question to defendant on cross-examination, as to whether he had not, when arrested, made a certain statement to the officers, was overruled, and exception noted, the subsequent admission of testimony of the officers that the defendant had made such statements was reviewable, though no exception was taken to the ruling of the court on the admission thereof.

6. HUSBAND AND WIFE—HUSBAND'S COMMON-LAW RIGHT TO CONTROL HOUSEHOLD NOT AFFECTED BY MARRIED WOMAN'S ACT OR WIFE'S OWNERSHIP OF HOUSE.

As respects criminal liability, the common law rule, making the husband the legal head of the family, with the general right to regulate, manage, and control the household, and the use of the family home, was not affected by the Married Woman's Act, or the fact that the wife was legal or equitable owner of the house occupied by the family.

7. CRIMINAL LAW—FACTS CONSTITUTING ONE OFFENSE, FORMING CONSTITUENT PART OF OTHER OFFENSE ADMISSIBLE.

Where facts constituting one offense are also connected with and form a constituent part of another offense, and are, therefore, relevant in a prosecution for one of such offenses, they are usually admissible in evidence.

8. CRIMINAL LAW—ANY FACT SUSTAINING OR IMPEACHING PERTINENT HYPOTHESIS IS RELEVANT.

Any fact which sustains or impeaches a pertinent hypothesis is relevant.

9. CRIMINAL LAW—TEST AS TO ADMISSIBILITY OF EVIDENCE OF OTHER CRIME STATED.

The test as to the admissibility of evidence as to the commission of another offense is not that it must show guilt, but such evidence is admissible if it reasonably tends to show guilt under the circumstances of the particular case, unless some positive rule of evidence excludes it.

10. CRIMINAL LAW—TESTIMONY AS TO DEFENDANT'S ADMISSION THAT HE HAD BEEN SELLING WHISKY HELD ADMISSIBLE IN PROSECUTION FOR POSSESSION THEREOF.

In prosecution for having possession of more than one quart of whisky, in violation of *Act. Gen. Assem. Feb.* 27, 1917 (29 *Del. Laws, c.* 10) § 2, involving the question of whether the defendant had possession of the whisky found by the officers on the day of the arrest, evidence as to an admission made by the defendant, at the time of his arrest, that he had been selling liquor for two weeks, *held* admissible, since evidence that defendant was selling whisky, though selling whisky constituted a separate offense, was admissible on the question of whether he had possession thereof.

11. CRIMINAL LAW—ORDER OF PROOF TO SOME EXTENT WITHIN DISCRETION OF COURT.

Generally the order of proof is to some extent within the discretion of the trial court.

12. CRIMINAL LAW—ADMISSION OF PROOF, MORE PROPERLY A PART OF STATE'S PRIMARY CASE, IN REBUTTAL, HELD NOT GROUND FOR REVERSAL.

In a prosecution for possession of liquor involving the question of whether the liquor found in defendant's house was in his possession, the admission of testimony by the state in rebuttal that defendant admitted that he had been selling liquor, though more properly a part of the state's primary case, was not reversible error.

13. WITNESSES—STATE COULD CONTRADICT DEFENDANT, WHO DENIED ON CROSS-EXAMINATION THAT HE HAD SOLD LIQUOR, BY TESTIMONY OF HIS ADMISSIONS.

In prosecution for possession of liquor, in which the defendant denied on cross-examination that he had admitted to officers who arrested him that he had been selling liquor, the state in rebuttal, and for the purpose of contradiction could prove that he had made such admission.

(*October* 23, 1923.)

WOLCOTT, Chancellor, PENNEWILL, C. J., RICE, HARRINGTON and RODNEY, J. J., sitting.

*Ayres J. Stockly* for plaintiff in error.

*Sylvester D. Townsend, Jr.*, Attorney-General, and *Aaron Finger*, Deputy Attorney-General, for defendant in error.

Supreme Court, No. 20, November Term, 1922.

WRIT OF ERROR TO THE COURT OF GFNERAL SESSIONS OF THE STATE OF DELAWARE, FOR NEW CASTLE COUNTY.

Benjamin Garboctowski, the plaintiff in error, was convicted and sentenced in the Court of General Sessions, for New Castle county, under an indictment charging him with having in his possession at one time more than one quart of spirituous liquor, to wit, whisky, in violation of the provisions of *Section* 2, *c.* 10, *vol.* 29, *Laws of Delaware*. This writ of error is to review the proceedings of said court.

The state proved that at about 4 p. m. on Saturday, October 7, 1922, police detectives raided the home of the said Benjamin Garboctowski, and the only occupants of his house consisted of himself, his wife, and their child; that at the time of making the said raid the detectives got out of their automobile in front of a house about three doors from the Garboctowski house; that when they approached the house of Garboctowski, he and his wife were standing outside looking at their automobile; that Mrs. Garboctowski first observed the approach of the officers, and without

Statement.

waiting for them to say anything ran into the house and back to the kitchen, closely pursued by them; that Garboctowski also followed his wife and the officers through the front part of the house and into the kitchen of his home; that an iron kettle, containing about three quarts of liquor, was sitting on the drain board by the sink in that room; that when Mrs. Garboctowski reached the kitchen she seized the kettle and poured the liquid which was in it, with the exception of what was spilled on the floor, probably amounting to one quart, into the kitchen sink; that at practically the same time she turned on the water spigot over the sink; that one of the officers immediately seized her, while another put his hand over the drain in the bottom of the sink, and turned off the water spigot; that another officer immediately took a cup and scooped more than one quart of the liquor from the sink; that the license for the store, though it does not appear where the store was located, was in the name of the plaintiff in error; that the plaintiff in error was immediately arrested on the charge of having in his possession more than one quart of spirituous liquor in violation of the provisions of the statute referred to; that he made no statement whatever at that time in explanation of the finding of this liquor in his home or of his wife's effort to pour it down the drain; that the liquor taken from the sink was kept by one of the officers and on November 4, 1922, a sample of it was turned over to Dr. Thomas R. Brown, a chemist, for analysis; that after making an analysis of such liquid Dr. Brown testified in direct examination that it was a spirituous liquor, containing 12 per cent. of alcohol and that in common parlance it might be termed corn whisky. On cross-examination he several times reiterated this statement. He further testified:

"Q. Are you able to testify that on October 7th this liquid was in the same condition?
"A. No.
"Q. Was this alcohol that was found of such alcohol that you could tell when it was formed?
"A. No.    *    *    *
"Q. And you don't know what formed that alcohol?
"A. No; it was grain alcohol.
"Q. You don't know what it was made of?
"A. No, sir.    *    *    *

"Q. Did you know when you examined this liquor whether it was in any state of fermentation at that time?

"A. No; it didn't show any evidence of bubbles.

"Q. It did show a cloudy appearance?

"A. Yes; and it does now.

"Q. What does that indicate?

"A. Nothing.

"Q. If there was dirty, soapy water in that liquor, that might cause the cloudy appearance?

"A. Yes, sir.

"Q. Are you prepared to testify that on October 7th that liquor which you examined on November 4th had in it more than one-half of 1 per cent. alcohol?

"A. No, sir; nobody could tell that.   *   *   *"

Redirect examination:

"Q. Do you say this is malt or spirituous liquor?

"A. Spirituous.

"Q. If any water were poured into the liquor would that increase or decrease the percentage of alcohol?

"A. It would decrease it to the amount of water added.

"Q. If this water had not been added, the percentage of alcohol would have been greater?

"A. Yes, sir."

Recross-examination:

"Q. Why do you say this is spirituous liquor?

"A. Because it contains alcohol.   I understand that the law says that every liquor that has alcohol in it is a spirituous liquor.   *   *   *"

Re-direct examination:

"Q. I think you testified that in common parlance this would be called corn liquor?

"A. Yes."

Re-recross-examination:

"Q. Would you say that this is not made from malt?

"A. That is a question that can't be answered with any degree of accuracy, because you might use malt and still make a spirituous liquor. Malt is used in making whisky and gin and some grades of wine, and the term is confusing."

At the close of the state's case, the attorney for the plaintiff in error requested the court to direct the jury to find a verdict of "not guilty," contending that the state had failed to make out a *prima facie* case against him, either in support of the allegation that the liquor found in the kitchen of his home was whisky or that he had possession of it.

The court refused the motion and an exception was noted. The plaintiff in error then put in his proof before the jury and took the stand in his own behalf.

After denying any knowledge or possession of the liquor found in the kitchen of his home on October 7, 1922, and that he was even in that room at the time the officers found it, he testified:

"Q. When did you come out of the house—what time that day?
"A. From 10 o'clock in the morning I was not at home."

He admitted, however, that he did have about a pint of spirituous liquor at that time, though he said he had turned it over to his wife, and did not know where she kept it.

He also testified on direct examination that his wife owned the property where they lived, but that he had made a store out of the front room, which he and his wife kept together.

On cross-examination, however, he testified that he owned their home property, though the legal title was in his wife's name.

In response to the question, "When you left in the morning did you know anything of a kettle setting alongside of the sink with a liquid in it containing alcohol?" he replied, "I did not pay no attention, because I go into the kitchen very little."

The state, in cross-examining the plaintiff in error, asked the the following questions:

"At the time you were arrested, or shortly thereafter, didn't you make a statement to Detective Kempski and to Captain Benson that you had been selling liquor for only two weeks?"

The question was objected to as being immaterial, the plaintiff in error not being charged with selling liquor. The objection was overruled, and an exception noted.

Garboctowski replied:

"I did not say that."

Finger, Deputy Attorney General, then stated:

"I will ask the question again and lay the ground for contradiction: 'Q. Did you not, on the day of your arrest, say to Detective Kempski and Captain Benson, in the office of Captain Benson, in the public building in this city, that you had been selling liquor for only about two weeks?'"

He replied:

"I did not state that."

There was no objection, and, therefore, no exception, to the above question and answer.

At the close of the defendant's case, Joseph Kempski, a witness for the state, was asked in rebuttal:

"On the day of the arrest of this defendant, did he not state to you and Captain Benson, in the office of Captain Benson, here in this building, that he had been selling liquor for only about two weeks?"

The witness replied:

"Captain Benson asked him how long he had been selling liquor out there, and he said, 'Only two weeks, yes, sir.'"

Robert J. Benson, a witness for the state, was also called in rebuttal, and being duly sworn was asked:

"The defendant in this case has testified that on the day of his arrest he did not make a statement to you and Detective Kempski, in your office in this building, that he had been selling liquor for only about two weeks; did he make such a statement at that time and place?"

He replied:

"He did."

No objections were made or exceptions noted to either of these questions or answers.

The causes of error assigned are in substance:

(1)   That the court below refused to direct the jury to return a verdict for the plaintiff in error at the close of the state's evidence in chief, pursuant to his motion to that effect.

(2)   That the court below permitted Garboctowski to be asked on cross-examination: "At the time you were arrested, or shortly thereafter, didn't you make a statement to Detective Kempski and Captain Benson that you had been selling liquor for only two weeks?"

(3)   That the court below admitted in rebuttal the above quoted testimony of Joseph F. Kempski and Robert J. Benson, to the effect that Garboctowski did admit to them that he had been selling liquor only about two weeks.

HARRINGTON, J., delivering the opinion of the court:

The first question to consider is whether this court can review on a writ of error the refusal of the court below at the close of the State's primary case to direct a verdict for Garboctowski, the plaintiff in error.

*Section* 12 of *Article* 4 of the Constitution of 1897 provides that the Supreme Court shall have jurisdiction to issue writs of error to the Court of General Sessions in certain cases "and to determine finally all matters in error in the judgments and proceedings of said * * * Court of General Sessions in such cases," etc. The same provision appeared in the Constitution of 1831 and precisely the same language is also used in both the Constitutions of 1831 and 1897 with respect to writs of error from the Superior Court.

At common law, in both civil and criminal cases, a writ of error could never be obtained before judgment; it was granted only to review a final determination of a case. 60 *Am. Dec.* 427, note; 12 *Cyc.* 798; 1 *Chitty, Crim. Law,* 747; 17 *C. J.,* 26; 3 *C. J.,* 314, 432; 2 *R. C. L.,* § 30, *p.* 46, and *Section* 21, *p.* 39; *Union Church v. Sanders,* 1 *Houst.* 100, 114, 63 *Am. Dec.* 187; *Woolley's Del. Prac.,* § 856. This rule was intended to compel the presentation of the whole case in one appeal and thereby to prevent the delay that would necessarily arise if several appeals were permitted in the same case. 2 *R. C. L.,* § 25, *p.* 42; *Cooper v. Wyman,* 122 *N. C.* 784, 29 *S. E.* 947, 65 *Am. St. Rep.* 731.

In construing the Constitution of 1897 and the similar provisions of the prior Constitution of 1831, the same rule has been applied, and it has been universally held that a writ of error will only lie to review "judgments and decisions in any proceedings * * * of a final character." *Union Church v. Sanders,* 1 *Houst.* 100, 115; *Brumley v. J. & M. Paper Co.,* 3 *Boyce* 544, 90 *Atl.* 83; *Ridings v. McMenamin,* 1 *Penn.* 15, 39 *Atl.* 463, and *Hession v. Wilmington,* 2 *Marv.* 1, 3, 42 *Atl.* 422; *Woolley Del. Prac,* §§ 856, 858. See, also, *Montello Brick Co. v. Pullman Palace Car Co.,* 4 *Penn.* 90, 54 *Atl.* 687.

Opinion.

In *Brumley v. J. & M. Paper Co.*, *supra*, the court, after referring to the Sanders Case, said,

"Tested by the ruling made in that case, we are constrained to hold that the refusal to quash the return to the alternative writ was a proceeding of a final character."

In *Ridings v. McMenamin*, *supra*, there was a refusal to grant a motion for judgment, notwithstanding defendant's affidavit of defense.

In refusing to note an exception to this ruling, the court held:

"That no exception would lie, as it was not a final judgment and no writ of error could be taken."

And in *Hession v. Wilmington*, *supra*, the court said:

"Upon careful investigation of the record now before us, we fail to find any judgment or decision of a final character in the cause in the court below, within the meaning and operation of said constitutional provision, and, therefore, the writ of error must be dismissed."

And in *Montello Brick Co. v. Pullman Palace Car Co.*, *supra*, the court refused to note an exception to its order permitting a special appearance by the defendant for the purpose of filing an affidavit of defense.

[1]    As is indicated by the above cases, questions often arise as to what judgments or proceedings are within the "final" class, but it has been long since settled in this state by a decision of the court of last resort, that no writ of error will lie either to the granting or refusing of a nonsuit.   May *v. Curry & Davis*, 4 *Harr.* 265; *Woolley's Del. Prac.*, §§ 678 and 858.

While there is some difference in opinion in other states as to whether the granting of a nonsuit is a judgment of such a final character that a writ of error will lie, we are bound by the rule laid down by our own court.

That being true, it necessarily follows that the same rule must apply in a criminal case in a motion of this character; and there is abundant authority for this position.   2 *R. C. L.* 45 and 46; *Matter of Ford*, 160 *Cal.* 334, 116 *Pac.* 757, 35 *L. R. A.* (*N. S.*) 882, *Ann. Cas.* 1912D, 1267.   This particular question has been several times considered by the Court of General Sessions of

this state. In *State v. Lynn* 3 *Penn.* 316, 328, 51 *Atl.* 878, under precisely the same circumstances, the trial court declined to note an exception to its refusal to direct a verdict for the defendant. While the reason for the court's ruling was not given, it must have been because it did not consider that its decision on the defendant's motion could be reviewed by a writ of error.

In *State v. Sienkiewiez*, 4 *Penn.* 59, 65, 55 *Atl.* 346, while the trial court noted an exception, it expressly stated that the effect of the exception was doubtful. *State v. Foster*, 1 *Penn.* 289, 292, 40 *Atl.* 939, was cited in this case, and it appears from the report of that case that an exception was noted without comment. While the case was heard in this court on writ of error, it appears (*Foster v. State*, 2 *Penn.* 111, 43 *Atl.* 265) that the same question was again raised by a prayer for binding instructions when the case was finally submitted to the jury. It, therefore, affords no support for the contention of the plaintff in error.

In *State v. Jones*, 4 *Penn.* 109, 114, 53 *Atl.* 858, there was a motion to strike out two counts in the indictment. The court refused the motion, whereupon the attorney for the defendant asked that an exception be noted. The court expressly stated, however, that no exception would lie as it was not a "final judgment."

[2] Our conclusion, therefore, is that the refusal of the trial court to direct a verdict for the defendant in this case was not a judgment or proceeding of such a final character that it can be reviewed on a writ of error in this court.

Practically the same question could have been raised by a prayer for binding instructions when the case was finally submitted to the jury, and by noting an exception in case of the court's refusal to charge as requested. That would have been the proper method of procedure, for the protection of any possible rights of the plaintiff in error in this case. *State v. Jones, supra.*

Such is the practice when the court refuses to grant a motion for a nonsuit in a civil case. *Woolley's Del. Prac.*, §§ 679 and 858.

[3] Perhaps it would not be improper to state, however, that if this court could have reviewed the evidence with respect to

this assignment of error, it would have held that the state proved a *prima facie* case and that the question of the guilt or innocence of the prisoner was, therefore, properly submitted to the jury.

The state contends that no exception was taken to the ruling of the court below on the admission of the testimony of Joseph F. Kempski and Captain Robert J. Benson, with respect to alleged admissions of the plaintiff in error that he had been selling liquor and that such ruling cannot, therefore, be reviewed in this court.

The record is as stated; but it also shows that practically the same question was asked Garboctowski on cross-examination, and that an objection was made and overruled, and that an exception was noted.

[4]    As a general rule objections, whether in connection with the admission of evidence or other matters, must be repeated at subsequent stages of the trial when this is necessary to call the court's attention to the facts and grounds of such objection in connection with the particular matters complained of; but this rule does not apply when the ruling of the court on a previous objection clearly covers and authorizes the subsequent proceedings so that further objection would be mere idle form. *Mine, etc., Supply Co. v. Parke,* 107 *Fed.* 881, 47 *C. C. A.* 34; *Wilson v. Monticello,* 85 *Ind.* 10; *Jones on Ev., vol.* 5, *pp.* 376, 377, 378; 8 *Pl. & Pr.* 229; 2 *R. C. L.* § 67, *p.* 91; 3 *C. J.* 749, 756.

[5]    This principle is applicable to this case.   The question asked Garboctowski was for the plainly apparent purpose of contradicting him. The court, therefore, had notice of such purpose when it overruled the objection of the attorney for the plaintiff in error, and noted an exception to its ruling.   The question brought a negative and, therefore, harmless answer, and clearly could not constitute reversible error; the assignment of error based on it was, consequently, not strongly pressed at the hearing. Whether, however, the question itself was objectionable will be considered  hereafter.

The subsequent questions put to Joseph F. Kempski and Robert J. Benson on rebuttal, however, brought the answer that

plaintiff in error stated to them on the day of his arrest that he had been only selling liquor for about two weeks.

One of the questions before us is whether this evidence was relevant.

In the court below it was admitted on the ground that it tended to show guilty knowledge with respect to the liquor found in the home of the plaintiff in error. This reason is not pressed in this court, but the question is whether the testimony of Kempski and Benson was admissible on any ground. This question is not free from difficulty.

[6]  At common law, the husband was the legal head of the family, with the general right to regulate, manage and control the household and the use of the family home. *30 C. J.* 510; *30 R. C. L. p.* 984, § 3; *State v. McDaniel, Houst. Cr. Cas.* 506; *State v. Lockwood,* 1 *Penn.* 76, *39 Atl.* 589. This rule is in no way affected by the *Married Woman's Act* (*Rev. Code* 1915, § 3047 *et seq.*), nor is it affected by the fact that the wife was the legal or equitable owner of the house occupied by the family. *State v. Lockwood, supra; State v. McDaniel, supra.*

The quantity of liquor found in the kitchen of the home of Garboctowski is not disputed, but whether it was in his possession is disputed.

He contends that proof tending to show that he was guilty of selling liquor is a purely collateral fact having no bearing on his guilt of the offense for which he was indicted.

In *State v. Brown,* 3 *Boyce* 499, 505, 85 *Atl.* 797, 799, the court said:

"It is undoubtedly the general rule that the prosecution is not allowed to prove the commission of another distinct offense, though of the same kind with that charged, for the purpose of proving the latter, or for the purpose of rendering it more probable in the minds of the jury that the defendant committed the offense for which he is on trial."

That there are many exceptions to the general rule and that evidence showing the commission of other offenses is often relevant, and, therefore, admissible on some grounds, is also well settled. *Wharton on Cr. Ev.* § 3; *State v. Brown, supra; People v. Molineux,* 168 *N. Y.* 264, 61 *N. E.* 286, 62 *L. R. A.* 193.

[7]   Where facts constituting one offense are also connected with and form a constituent part of another offense and are, therefore, relevant, they are usually admissible in evidence.

This is one of the exceptions to the general rule stated above; while it is sometimes put on the ground that it constitutes a part of the *res gastae*, whether that ground is the proper one need not be considered by us. *Wharton, Cr. Ev.*, §§ 31, 33; *Wigmore on Ev.*, §§ 218, 305, 306; *Chamberlayne's Handbook on Ev.* § 1020; *People v. Furlong*, 140 *App. Div.* 179, 125 *N. Y. Supp.* 164, 168; *State v. Gorman*, 58 *N. H.* 77; *State v. Lapage*, 57 *N. H.* 245, 288, 24 *Am. Rep.* 69; *Chamberlayne on Ev.*, § 3252.

[8]   The question for us to determine is whether the evidence of Kempski and Benson is within the above exception.   That any fact which sustains or impeaches a pertinent hypothesis is relevant, is clear.   *Wharton's Cr. Ev.*, § 24.[1]

[9]   It is true that the admission of the plaintff in error that he had been selling liquor "out there" for two weeks would not necessarily show that he had possession of the particular liquor found in his home on October 7th.   The test of the admissibility of evidence, however, is not that it must show guilt; if it may reasonably tend to show guilt under the circumstances of the particular case it is ordinarily relevant and admissible unless some positive rule of evidence excludes it.   *Jones on Evidence*, § 173.

Such admission was made on October 7th, the very day the liquor described in the indictment was found, and in response to a question put by a police officer a few hours after the arrest of Garboctowski on the charge of having illegally in his possession in his home more than one quart of whisky.   It referred to his acts for about two weeks immediately prior to that time; and the only reasonable inference is that it referred to acts in his own home or in the store located therein.   Such statement must also be considered in connection with the further admission that he had in his possession, also apparently in his home, on October 7th, about one pint of spirituous liquor; and that whisky is a spirituous liquor, is admitted.

---

[1]See, also, *State v. Wood*, 3 *W. W. Harr.*, (33 *Del.*), ——.

The ques tion before the trial court was whether Garboctowski had poss ession of the whisky found in the kitchen of his home on that day.  Under an indictment for the sale of whisky, evidence that the defendant had such a large quantity of whisky in his possession about the time of the alleged sale, as to be inconsistent with the theory that it was intended for his personal use, is admissible.  *State v. Ryan*, 1 *Boyce* 223, 75 *Atl.* 869, 23 *Cyc.* 250.

The question presented here, however, is in a sense the converse of that proposition.

[10]  It is true that Garboctowski's admission was that he was selling "liquor," but that word in common usage means intoxicating liquor.  *State v. Gulczynski*, 2 *W. W. Harr.* (32 *Del.*) 120, 120 *Atl.* 88.  And the court would take judicial notice of the fact that whisky was an intoxicating liquor.  *Jones on Ev.* § 128, 23 *Cyc.* 61; *Blatz v. Rohrbach*, 116 *N. Y.* 450, 22 *N. E.* 1049, 6 *L. R. A.* 669; *Rau v. People*, 63 *N. Y.* 277.  If, therefore, he was selling intoxicating liquor in his house on or about that date and had been selling it for about two weeks immediately prior thereto, and whisky was within that class, under the facts of this case evidence relating to that offense had some reasonable connection with and relation to the particular offense charged; it is, therefore, logically permissible for the jury to infer that he not only had possession of liquor at that time but that the particular kind and quantity of liquor found in his home on that day was in his conscious possession.  In reaching this conclusion we have not overlooked *State v. Ryan*, 1 *Boyce* 223, 75 *Atl.* 869; and if such conclusion is inconsistent with any of the rulings on evidence in that case we are unable to follow it so far as this particular question is concerned.

[11, 12]  The evidence in question was produced by the state in rebuttal.  It contends that it is relevant because it tends to rebut the defense relied on by the plaintiff in error.  It was in the nature of an admission by him, and, therefore, more properly constituted a part of the state's primary case.  As a general rule the order of proof is to some extent within the discretion of the trial court.  *Roberts v. State*, 2 *Boyce* 385, 79 *Atl.* 396, *Ann. Cas.* 1914D, 1266.  Being relevant to the issue, the mere fact that

evidence showing the commission of another offense by the defendant was offered and admitted in rebuttal, though more properly a part of the state's original case does not, therefore, ordinarily, or in this case, constitute material error. *State v. Roberts, supra.*

If the evidence tending to show that the defendant was selling liquor was relevant and proper in this case, was the testimony of Kempski and Benson admissible for any other than a probative purpose?

Garboctowski, the defendant below, was asked on cross-examination whether he had admitted to Kempski and Benson at a certain time and place that he had been selling liquor, apparently meaning at his home, for about two weeks.

[13] This question related to a relevant and material fact and brought a negative answer. That he could, therefore, be contradicted with respect to such answer seems clear. *Chamberlayne on Ev.*, vol. 4, § 3253; *Chamberlayne's Handbook on Ev.*, § 1021; *State v. Kenny*, 77 *S. C.* 236, 57 *S. E.* 859; *Com. v. House*, 36 *Pa. Super. Ct.* 363.

From this aspect of the case the question put to Garboctowski on cross-examination with respect to his admission to Kempski and Benson, though assigned as a cause of error, was not an improper one.

For both of the reasons above given, the evidence in question was relevant and was properly admitted by the trial court.

The judgment of the court below is, therefore, affirmed.

ED. NOTE:—The following Delaware cases considered the admissibility of evidence of other similar offenses in the trial of criminal cases. When admissible to show knowledge or intent. *State v. Tyndal*, 5 *Harr.* 488 (Passing counterfeit money; admitted. See, also, *Effler v. State*, 4 *Boyce* 62 *at p.* 67); *State v. Cook*, 4 *Penn.* 32 (Toying with female child; rejected); *State v. Dlugozima*, 7 *Penn.* 151, (using girl under age of consent; rejected); *State v. Freedman*, 3 *Penn.* 403, 406 (Receiving stolen goods; admitted); *State v. Brown*, 3 *Boyce* 499 (abortion; rejected,-discusses rule); *State v. Handy*, 7 *Boyce* 449 (Receiving stolen goods; admitted); *State v. Greco*, 7 *Boyce* 140 (assault with intent to commit rape; rejected,-discusses rule); *State v. Brewer*, 1 *W. W. Harr.* (31 *Del.*) 364 (Rape; rejected); *Effler v. State*, 4 *Boyce* 62 at *p.* 65, where the Super. Ct. said: "Testimony of other similar offenses has been admitted in this state as elsewhere, to show guilty knowledge or intent when there is or may be from the evidence an inference of mistake, accident, want of guilty knowledge, lawful purpose or innocent intent". When admissible to show identity of the defendant, *State v. Effler*, 4 *Boyce* 62, see, also, report

of same case in lower court, 2 *Boyce*92 (Conspiracy to steal). In holding that the evidence was improperly admitted in the lower Court, the Supreme Court on page 71, said: "To prove identity, \* \* \* there must be some connection between the two offenses, and it is not sufficient that they be similar offenses committed by the same person". When admissible to show a similar scheme, plan or system. *State v. Steigler, Dorsey, et al.*, 7 *Boyce* 236, 258 (Conspiracy to cheat and defraud S.... Co. of certain plumber's supplies; held not admissible on that ground but when other offense part of one and the same general conspiracy charged, rule different.) See, also, *Effler v. State*, 4 *Boyce* 62. For a more specific analysis of the Delaware cases on this question see *State v. Clough*, 3 *W. W. Harr.* (33 *Del.*) ——.