143 A.2d 123 (1958)
Marguerite M. OWENS, Plaintiff,
v.
Ellwood E. OWENS, Defendant.
Court of Chancery of Delaware, Sussex.
June 30, 1958.
*124 Daniel J. Layton, Sr., and Daniel J. Layton Jr., Georgetown, for plaintiff.
Houston Wilson, Georgetown, and James M. Tunnell, Jr., Tunnell & Tunnell, Georgetown, for defendant.
*125 SEITZ, Chancellor.
Plaintiff asks to have this court eject her husband from the furnished apartment last used by them as the marital home; she having moved therefrom. This apartment is one of three apartments in the Triplex Apartment house. She also seeks to prevent him from using a portion of the garage for business storage purposes, which garage is a part of the so-called Duplex Apartment house. Finally, she wants this court to restrain defendant from interfering with her apartment rental business. The real property and furnishings involved are "owned" solely by plaintiff.
Defendant does not challenge this court's jurisdiction to entertain this action which sounds in equitable ejectment. However, defendant insists that plaintiff has failed to establish her right to have him ejected from the marital apartment or from the use of a portion of the garage. The defendant also counterclaimed against plaintiff for certain sums of money on the basis of work done for or money advanced to or for plaintiff's benefit in connection with her operation of her apartment rental business.
The plaintiff and defendant were 58 and 64, respectively, when they were married in August 1954. Both had been married previously and had grown children. At the time of their marriage defendant, who was in the general contracting business, was "worth" about $70,000. Plaintiff was "worth" about $20,000 at the time and was endeavoring to operate an electrical contracting business. Plaintiff had substantially more formal education than defendant and had, in contrast to him, a veneer of sophistication.
It appears that plaintiff left the marital apartment some time before she commenced the action in December of 1956. Defendant continued to live in the apartment until he moved, by agreement of counsel, without prejudice to his rights.
Plaintiff testified in effect that she left because she was afraid defendant might inflict further physical injury upon her.
I am satisfied from the credible testimony that there was some strained relations between the parties. I am not satisfied that plaintiff was the victim of substantial physical assault by defendant. Moreover, I am convinced that their difficulties arose largely as a result of plaintiff's unjustified activities and accusations. Certainly the "atmosphere" in this family was something less than desirable. Indeed, toward the end, a practice of the marital niceties was noticeably absent on both sides. However, plaintiff brought much of it upon herself. I conclude on the evidence, that plaintiff did not have "legal" or even "practical" cause for leaving defendant. Under these circumstances is plaintiff entitled to have defendant evicted?
Emphasizing statutory language in varying degrees, the following cases appear to support the view that a wife may evict her husband from the marital domicile owned by her even though the husband is not at fault; Edmonds v. Edmonds, 139 Va. 652, 124 S.E. 415; McDuff v. McDuff, 45 Cal.App. 53, 187 P. 37; Wilkinson v. Wilkinson, 147 La., 315, 84 So. 794; Minier v. Minier, 4 Lans., N.Y., 421; Wood v. Wood, 83 N.Y. 575; Till v. Till, 15 Ont. Rep. 133; compare Cook v. Cook, 125 Ala. 583, 27 So. 918 (homestead case). I should add that it appeared as a fact in some of these cases that the husband was at fault. See, e. g., Wood v. Wood, above. How much this actually influenced those courts I cannot say.
In contrast, the following cases, by way of holding or dictum, appear to adopt the rule that a wife cannot dispossess a husband from their marital domicile owned by her where the separation is her fault, or at least not the husband's fault. Kelley v. Kelley, 51 R.I. 173, 153 A. 314, 74 A. L.R. 135 (lawful cause); Hall v. Hall, 193 Tenn. 74, 241 S.W.2d 919; McKendry v. Fessler, 131 Pa. 24, 18 A. 1078, 6 L.R.A. 506; Ireland v. Ireland, 244 Pa. 489, 90 A. 911; Manning v. Manning, 79 N.C. 293 (must be sufficient ground for wife to obtain divorce or separation); Sackman v. *126 Sackman, 143 Mo. 576, 45 S.W. 264 (by implication); Propes v. Propes, 171 Mo. 407, 71 S.W. 685; and see 21 A.L.R. 745, et seq.
Thus, numerically at least, there is little to choose between the states which will dispossess a husband from a marital establishment owned by the wife (out of possession) without regard to fault and those which require a showing of fault on the husband's part. Nor can one detect a "modern" trend in the relatively few cases which have considered the problem. So far as appears, the issue never has been decided previously in Delaware.
The question here is whether a wife out of possession is entitled to have her husband evicted from the marital domicile owned by her when the defendant gave plaintiff no legal or "practical" grounds for leaving that domicile?
Under our Married Women's Act (13 Del.C. § 311), a wife may own property separately and "may sell, convey, assign, transfer, devise, bequeath, encumber or otherwise dispose of the same, and she may contract jointly (including with her husband) or separately, sue and be sued, and exercise all other rights and powers, including the power to make a will, which a feme sole may under the laws of this State".
It is thus apparent from our Married Women's Act that a wife may, generally speaking, be treated as a single person when dealing with her own property, at least as against third persons. That the Act did not give her complete freedom of action where her husband is concerned is apparent from the cases. See, e. g., Plotkin v. Plotkin, 2 W.W.Harr. 455, 125 A. 455 (wife cannot sue husband at law); Garboctowski v. State, 2 W.W.Harr. 386, 123 A. 395 (husband's right to control household not affected).
The Virginia court's decision in Edmonds v. Edmonds, above, represents the view that the wife is entitled to have the husband evicted even if the separation is solely her fault. However, the court emphasized that the Virginia statute (Code 1919, § 5134) was more favorable to the wife than the ordinary Married Women's Act because, as the court said [139 Va. 652, 124 S.E. 417]:
"The husband's rights so far as the wife's property is concerned are determined by our statute (supra), and his occupancy or use or control thereof are not only not provided for thereby but they are expressly provided against."
However, it does appear that some of the other courts seem to have reached the same result apparently without such explicit statutory language.
The cases which take what may be called the opposite approach, of which the recent Rhode Island case of Kelley v. Kelley, above, is an example, require a showing that the wife had "lawful cause" to leave the marital domicile owned by her before she can have the husband evicted. This ruling was made by the Rhode Island Court despite a Married Women's Statute (Gen. Laws 1923, c. 290, §§ 1, 14) as broad as our own. The cases supporting this view are based upon the reasoning that the emphasis must be on the marital domicile aspect of the problem rather than mere separate ownership. This is so because marriage contemplates that the parties will live together and consequently a rule should be adopted which favors the continuance rather than the destruction of that relationship, at least where the husband is without fault.
Does our statute require this court of equity to grant the wife relief in the present situation?
Our Supreme Court held as follows in Garboctowski v. State, 2 W.W.Harr. 386, 123 A. 395, 399:
"At common law, the husband was the legal head of the family, with the general right to regulate, manage and control the household and the use of the family home. 30 C.J. 510; 30 R.C.L., p. 984, § 3; State v. McDaniel, Houst.Cr.Cas. 506; State v. Lockwood, *127 1 Pennewill 76, 39 A. 589. This rule is in no way affected by the Married Women's Act (Rev.Code 1915, § 3047, et seq.), nor is it affected by the fact that the wife was the legal or equitable owner of the house occupied by the family. State v. Lockwood, supra; State v. McDaniel, supra."
It is of course true that the Married Women's Act did give married women the right to hold their property generally as though unmarried. Yet, it is not always clear that the statute is to be liberally construed as against the husband's common law rights. Compare In re Mikolajewski, 7 Terry 345, 83 A.2d 750.
Of course this court recognizes that the foregoing principles are not precisely applicable to the present situation. However, they do tend to show that the Married Women's Act did not abrogate the husband's "legal control" in the marital domicile even when that domicile is owned by the wife. And this would seem to be so not only as against third parties but as between husband and wife.
A married woman is entitled to have her separate property rights "vindicated" even as against her husband. Nevertheless, the Married Women's Statute is by no means so clear a mandate that a court of equity must in this situation grant relief to the wife and against the husband without regard to "fault". Even the Viriginia court in Edmonds v. Edmonds, above, recognized the desirability of exercising a discretion in this situation if the statute permits. Thus the court said:
"In most of the statutes there is nothing said about marital rights. They are content, for the most part, to give the wife the right to acquire property and to own it as her sole and separate estate. On grounds of public policy the inference could very well be drawn in cases where the wife's property had been set aside as a joint or family home with her consent, that she could not desert it without cause, and then, taking advantage of her own wrong, turn her husband out."
As the Rhode Island court suggested in the Kelley case, to grant relief where the wife is at fault, would be disruptive of the marriage relationship. Moreover, it would often penalize the husband who, though he cannot rebut the presumption of gift, has often been financially responsible for the creation or increase in value of the marital domicile.
If it be said that the wife should be permitted to evict her husband because she might be able to dispose of or encumber the property, I answer that the proper court would face those problems if and when they arose. Such possible complications do not seem a sufficient reason to adopt a rule in equity which would result in the granting of affirmative relief to the wrongdoer, at least not in the absence of explicit statutory language, such as confronted the Virginia court.
I conclude that plaintiff, having left the furnished marital domicile without cause, is not entitled to use equity's process to have her husband evicted therefrom.
I am not satisfied that the evidence shows enough to warrant the issuance of an injunction prohibiting the defendant from interfering with the apartment rental business. Needless to say, however, he has no right to interfere.
I turn next to defendant's counterclaim. This aspect of the case would challenge a modern day Solomon. Defendant spent large sums for the support and maintenance of the plaintiff and her family during the period they lived together. He makes no claims for any such money. He also makes no claim for the money spent for the maintenance of the marital domicile  their apartment. He does claim that he is entitled to some form of relief based upon work done, services rendered and payments made on her separate business property. *128 Plaintiff does not challenge the accuracy of the amounts involved.
The plaintiff and defendant started out merely as parties to a contract by which defendant agreed to build a Triplex apartment house. As work progressed so did their non-business relationship. They became engaged in November 1953 but were not married until August 1954. During the engagement period, and during the period of of their marriage while they lived together, defendant did substantial construction work and advanced substantial sums of money for the benefit of plaintiff's rental units.
There is a presumption that a benefit bestowed upon a wife by her husband while they are living together as such is a gift, at least where their personal relationship does not militate against it. I shall assume without deciding that the presumption should be extended to the engagement period. Does the evidence rebut the presumption?
I am satisfied from the evidence that defendant performed most of the work in the expectation, known to plaintiff, that he would be benefitted on the basis of an agreement between the parties. I find that it was agreed that the property which each owned before marriage would go to his or her respective children, while at least the income from her rental properties would be used by plaintiff and defendant to maintain themselves when they could no longer work. This understanding was rather loose but was established in my view.
There are other factors which tend, in my mind, to help rebut the presumption of an unconditional gift. I refer principally to the fact that defendant's claims relate to benefits bestowed upon plaintiff's separate business property  from which she has kept the income  and that the relationship of the parties arose out of a business transaction concerning such property. The business nature of that arrangement continued after marriage.
I might add that in less than two years defendant, without profit, incorporated one-third of his estate into plaintiff's properties. This is a circumstance entitled to weight when we consider defendant's age and the fact that the plaintiff rather than defendant was the dominant member of this discordant duet. Indeed, I think the inference is warranted that plaintiff intentionally "took" defendant. The fiduciary rule of Peyton v. William C. Peyton Corp., 23 Del.Ch. 321, 7 A.2d 737, 123 A.L.R. 1482, is inapplicable under the present facts. Indeed, it is the defendant who needed protection. He was obviously "no match" for plaintiff. This case does not involve the "lawyer consultation" aspect of the fiduciary rule in the wife's favor.
In view of the actions and attitude of plaintiff toward defendant I think defendant's claims should be viewed as monetary in nature. I say this because any agreements they may have had are now substantially frustrated by plaintiff's actions.
Let us now consider the specific items claimed. Preliminarily, I note that defendant has not claimed any money for improvements on the marital apartment and has also abandoned his claim for maintenance, repairs and operating expenses connected with the rental units.
Defendant made a contract with plaintiff to construct the Triplex Apartment house for $9,800. Actually, defendant finally spent $19,074.13 and received $10,300 from plaintiff, leaving a balance of $8,774.13. The increase in cost from the contract price represents the work done to convert the Triplex Apartment from a summer to a year-round occupancy. Some later work was done when plaintiff and defendant moved their marital domicile from the upstairs apartment to one of the first floor apartments.
There is some confusion about this claim but it does appear that defendant has not rebutted the presumption of gift. It seems that the extra work here mentioned *129 was done to make the upstairs apartment suitable for a marital home. It was so used. I conclude that this claim should not be allowed.
As to the Garage Apartment, defendant himself testified that if plaintiff would put up $6,000 he would match it and stand any difference. Taking this to be true, I conclude that as to $6,000, defendant was, to plaintiff's knowledge, to be reimbursed by way of future joint use of income. Since plaintiff's conduct precludes this possibility, I think in equity defendant is entitled to be reimbursed. Since defendant is being reimbursed in cash for this item I conclude that he is not entitled to use a portion of the garage.
As to the remodeling of the Powers Apartment which totaled $1,002.36, I am satisfied that both parties contemplated that defendant was not making an unconditional gift but was to benefit in the future from the income produced. For the reasons given above I conclude that defendant is entitled to a claim in this amount.
I am also satisfied that the work done in clearing, gardening and filling as well as the work on the cesspool ($3,360.75) was done subject to the understanding found above and should be allowed. This was not like the case of a husband spending money to improve the marital domicile. This was in aid of a business operated by the plaintiff.
I am satisfied that both parties understood and agreed that defendant would be reimbursed for the furniture, etc., totaling $6,230.71 which he purchased to furnish plaintiff's rental units. It will be allowed.
Finally, I believe that defendant is entitled to be reimbursed for all loans and advances except the $800 loan and the $150 advance which will not be recognized. The net figure allowed is therefore $3,022.50.
I conclude that defendant is entitled to an equitable lien on the premises in the aggregate amount allowed. I pause to note that unless any other lien creditor of record agrees, the equitable lien will have to be subordinated thereto. Also, counsel should keep in mind that there may be a problem in attempting to apply the lien to real estate not owned of record solely by plaintiff.
Present order on notice.